447 So.2d 293 (1984)
UNIVERSAL CORPORATION and American Insurance Company, Appellants,
v.
Ervin Hart LAWSON, Appellee.
No. AP-128.
District Court of Appeal of Florida, First District.
January 10, 1984.
As Clarified on Denial of Rehearing March 14, 1984.
Jeffrey A. Cramer and Suzanne R. Armstrong of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellants.
No appearance for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) appeal a compensation order, contending that the deputy commissioner (deputy) erred in: (1) ordering payment of chiropractor's bills; (2) finding that maximum medical improvement (MMI) was not reached and that the claimant was temporarily totally disabled (TTD) for six weeks after his injury; (3) ordering additional medical treatment; and (4) failing to rule on ripe questions concerning rehabilitation, permanency, and attorney's fees. We reverse in part and affirm in part.
*294 Claimant, a 29-year-old man, has only worked as a farm laborer, a fruit picker, and a common laborer. He is not sufficiently skilled in reading and writing to hold any type of "book and pencil job." On Wednesday, January 27, 1982, claimant sustained a compensable injury to his back when he lifted a heavy electric motor. He worked the remainder of the day but when his pain worsened on the following day, he reported the injury and was seen by the employer's nurse. Although the nurse applied heat and gave him aspirin, his pain was not alleviated. During the weekend he sought care from a chiropractor. The chiropractor called the employer for authorization to treat the claimant and authorization was granted on an emergency basis. On the following Monday, February 1, 1982, the employer twice telephoned the chiropractor's office to request that the claimant be referred to Dr. Coury, a medical doctor, and to notify the chiropractor that his authorization had been withdrawn.
When Dr. Coury saw claimant on February 2, 1982, he diagnosed a left side thoracic area paravertebral muscle sprain and placed the claimant on light duty. He prescribed muscle relaxants and physical therapy treatments of heat, massage, and ultrasound. These treatments were supplied to the claimant on February 2 and February 3. When the claimant saw Dr. Coury again on February 4, he told Dr. Coury that the treatment had not helped him and that he wanted to continue to see the chiropractor. Dr. Coury released claimant to return to full duty as of February 5, 1982 because he found that claimant no longer had any muscle spasm or any other objective sign of injury, because the x-ray studies were negative, and because the claimant appeared dissatisfied with the treatment being furnished.
On February 8, 1982, the E/C telephoned the chiropractor to notify him he was no longer authorized and on February 18, 1982, the E/C deauthorized the chiropractor in writing. On the same date the E/C also wrote the claimant informing him that because he had been released to work as of February 5, 1982, no compensation was due. The E/C offered further orthopedic treatment if the claimant desired it, and invited claimant to call and request such treatment. In a March 26, 1982 letter to claimant's attorney, the E/C again offered examination and treatment by an orthopedic surgeon and provided the names of three orthopedists that they would be willing to authorize. The claimant did not seek further medical care but continued chiropractic treatment until the chiropractor released him on April 3, 1982, with restrictions on heavy lifting. Although the chiropractor apparently reported to claimant's attorney that the claimant had a 5% permanent impairment under the AMA Guides, he did not testify either at the hearing or by deposition and his written reports, if any, were not admitted into evidence.
Dr. Lipinski, an orthopedic surgeon, examined claimant on July 26, 1982 and found no permanent impairment. He felt claimant had fully recovered from any injury he may have sustained and was capable of resuming his full duties. Dr. Lipinski testified that the type of injury the claimant sustained was self-resolving if not further aggravated by trauma or strenuous labor, that such injuries always resolve themselves within a maximum of six weeks, that the type of treatments rendered by the chiropractor would not have had any therapeutic effect on claimant's injury after the first two weeks, and that the injury was such that no benefit would accrue from physical therapy lasting longer than 10 days to two weeks. Dr. Lipinski also testified that the chiropractor was wrong in assigning a permanent impairment rating, and that the tests which the chiropractor used to arrive at the rating would not yield the type of information which could be used to determine a rating under the AMA Guides.
In a claim filed March 1, 1982, claimant sought TTD, treatment by the chiropractor, and attorney's fees based on bad faith. In his application for hearing claimant also requested vocational rehabilitation. At the hearing claimant testified he was still in pain, and that although his condition had *295 improved while he was receiving chiropractic care, his condition had become worse after the chiropractor had released him. Claimant admitted he did not attempt to find work prior to April 3, 1982, the date the chiropractor released him.
Emergency chiropractic care was authorized shortly after claimant's accident and was not properly deauthorized until March 26 when the E/C wrote the claimant's attorney naming the three orthopedic physicians they were willing to authorize. Our conclusion that the chiropractor was not properly deauthorized until March 26 should not be interpreted as a holding that a health care provider may not be deauthorized by verbal communication made telephonically or otherwise. Rather, we find on the basis of the record before us that on and after February 5, 1982, the E/C knew, or in the exercise of due diligence could have discovered, that claimant was dissatisfied with the treatment afforded by Dr. Coury. The E/C then became obligated to offer alternative care by "select[ing] another physician to treat the injured employee." Section 440.13(2), Fla. Stat.; Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982). The E/C made no valid offer of alternative care until March 26, when they wrote claimant's attorney specifically naming the three orthopedists they were willing to authorize. Therefore, the E/C's several attempts to deauthorize the chiropractor by telephone were ineffective. Although we conclude that the deputy was correct in finding that the E/C should be responsible for payment of chiropractor's bills incurred prior to March 26, 1982, we must nonetheless reverse the portion of the order directing the E/C to pay the bills since the evidentiary predicate for the award was insufficient. So far as the record before us discloses, the bills were not admitted into evidence and there was no testimony from the chiropractor or anyone else to establish the amount of the chiropractor's bill for services rendered prior to March 26. Friendly Ford v. Hurrell, 427 So.2d 207 (Fla. 1st DCA 1983). Upon remand, the deputy may reinstate the award of the chiropractor's bills upon a showing of proper proof.
There is no medical evidence that could support the deputy's finding that claimant was TTD at any time after the date of his injury. On the contrary, both doctors unequivocally testified that the claimant could perform at least light duties at all times. The chiropractor did not testify and his report, if any, was not introduced into evidence. The claimant admitted that he conducted no work search during this period. Accordingly, the award of TTD is reversed. See Tallahassee Coca Cola Bottling Co. v. Parramore, 395 So.2d 275 (Fla. 1st DCA 1981); Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981).
Even the claimant admits he reached MMI by April 3, 1982 although the E/C contend that he reached MMI at an earlier date. The award of further remedial treatment is therefore reversed.
The claimant having reached MMI, it was error for the deputy to find it was premature to determine permanent impairment and entitlement to vocational rehabilitation. The questions of permanent impairment and rehabilitation were ripe, at issue, and should have been ruled on at the hearing. See Washington Square Associates, Ltd. v. Bourne, 408 So.2d 809 (Fla. 1st DCA 1982). The reservation of jurisdiction to determine the issue of entitlement to attorney's fees based on bad faith in a separate hearing is authorized, although not mandated, by law and is affirmed. See Embry-Riddle Aeronautical University v. Vestal, 399 So.2d 1033 (Fla. 1st DCA 1981).
Affirmed in part and reversed in part, and remanded with instructions to determine, upon the existing record, the issues of permanent impairment and entitlement to vocational rehabilitation.
ERVIN, C.J., and NIMMONS, J., concur.