**Dr. L. Alfred NORVILLE, Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Defendant.**

**Civ. A. No. J86-0603(B).**

United States District Court,
S.D. Mississippi,
Jackson Division.

July 20, 1988.

W. Joseph Kerley, Thomas J. Lowe, Jr., Jackson, Miss., for plaintiff.

Richard S. Bush and Kenneth G. Perry, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on Motion of Defendant Commercial Union Insurance Company for Summary Judgment or Partial Summary Judgment. For the reasons set forth below, the Court finds there are no genuine issues of material fact and the Defendant is entitled to summary judgment on all claims.

The Plaintiff is a licensed chiropractor in Hinds County, Mississippi. The Defendant is a workers' compensation insurance carrier for an employer, Tire Service, Inc. One of Tire Service's employees, Suttle Greenwood, was injured on May 10, 1984, while lifting a tire at work. There is no factual question regarding Greenwood's injury or that the employer authorized Greenwood to see a chiropractor for treatment of his back pain. Tire Service submitted a workers' compensation claim to its carrier to pay for the chiropractic treatment rendered by the Plaintiff. The Plaintiff asserts that Jimmy Chandler of Todd–Davis–Chandler Insurance Agency, Defendant's agent, had told Tire Service that chiropractic service was compensable under workers' compensation.

Once it was informed of the claim for chiropractic treatment, the Defendant sent a letter dated May 15, 1984, to the employee explaining that chiropractic treatment was not covered under workers' compensation. The letter by Commercial Union's claims processor, Connie Jones, stated:

> We have received your claim and noticed you were seeing a chiropractor. The Mississippi Workmen's Compensation Act states that we are only responsible for treatment rendered by a licensed medical doctor. In the future if treatment is needed for this injury we will only be able to pay for treatment rendered by a licensed medical doctor.

A copy of the letter was sent to Greenwood's employer, Tire Service, to the Plaintiff Dr. Norville, and to Jimmy Chandler. Plaintiff submitted a bill for $476.00, but Defendant Commercial Union paid only $376.00 since it believed $100.00 was for services incurred after May 15, 1984, when the Defendant revoked authorization for chiropractic services.

The Plaintiff makes a thinly veiled attempt to obtain a judicial ruling that chiropractic treatment is fully compensable under Mississippi workers' compensation law. The Plaintiff bases his argument that payment to him for chiropractic services must be provided under a statute, *Miss. Code Ann.* § 83–41–215 (Supp.1986)[1], and on the fact that the employer authorized the treatment. Plaintiff claims that the termination by Defendant of further payments for chiropractic treatment for Greenwood was a tortious interference with a business relationship (between Plaintiff and Greenwood and between Plaintiff and other injured employees of Tire Service); violated Section 83–41–215; and, constituted a bad faith refusal to pay a valid insurance claim.

Plaintiff seeks actual as well as punitive damages.

■ Defendant has argued that because Plaintiff was a mere provider of services he has no standing to assert claims under the Mississippi Workers' Compensation Act. Plaintiff's claims for tortious interference and bad faith are couched in terms so that they present a case for Plaintiff rather than a claim for Workers' Compensation benefits. Section 83–41–215 can be read broadly enough to encompass Plaintiff's claim thereunder. Accordingly, Plaintiff does have standing to sue under the claims he has set forth.

■ The Defendant argues that Section 83–41–215 is not applicable to a workers' compensation carrier because that section is a general statute not included in the Workers' Compensation Act. Section 83–41–215 provides for reimbursement for chiropractic services only to the insured or a beneficiary, not to a provider of the services. The Court notes that the workers' compensation statutes, *Miss. Code Ann.* §§ 71–3–9 and –15 (Supp.1987), and Rule 9 to those statutes clearly exclude chiropractic treatment unless it is approved by the employer or carrier. The workers' compensation statutes were amended subsequent to the passage of Section 83–41–215 in 1980, and the workers' compensation statutes continue to exclude chiropractic treatment as generally compensable. The workers' compensation statutes are specific and will control rather than a general statute such as *Miss. Code Ann.* § 83–41–215. The Plaintiff, therefore, does not have a cause of action arising under Section 83–41–215.

■ The primary issue presented in this case is whether the carrier may withdraw authorization for chiropractic treat-

1. Section 83–41–215 provides:
Whenever any policy of insurance or any medical service plan or hospital service contract or hospital and medical service contract issued in this state provides for reimbursement for any service which is within the lawful scope of practice of a duly licensed chiropractor as defined in section 73–6–1, Mississippi Code of 1972, then such service may be performed by a duly licensed chiropractor, and the insured or other person entitled to benefits under such policy, plan or contract shall be entitled to reimbursement for such services. The insured shall have the right to choose the place where the service is to be performed as well as the chiropractor to perform such service, provided that such service shall be performed in the chiropractor's office, clinic or regular place of business. *Miss. Code Ann.* § 83–41–215 (Supp.1986).

ment after the employer has authorized it. This Court is *Erie*-bound to apply the law of Mississippi, but is without precedent and accordingly applies what it believes the Mississippi Supreme Court would hold if presented with the issues. The Court sought supplemental arguments on the issue of whether Commercial Union validly revoked any authorization of chiropractic treatment, and the parties analyzed Florida law with regard to this question. The Plaintiff argues that Defendant's agent, Jimmy Chandler, authorized the treatment and Defendant could not change physicians without showing good cause or evidence that the treatment was defective or that additional treatment was necessary; the Plaintiff cited *Cal Kovens Construction v. Lott*, 473 So.2d 249, 252 (Fla.App. 1st Dist. 1985) and *Gephart v. Certified Grocers*, 482 So.2d 420, 421 (Fla.App. 1st Dist.1985). Plaintiff claims the carrier has given no medical reason for the revocation of the initial authorization. The Defendant Commercial Union argues that its agent Chandler did not authorize the employer to send the employee to a chiropractor, but even if the agent did so, Commercial Union did not waive its right to later revoke that authorization.

In *Cal Kovens* the Florida court required payment of the chiropractor; but, it did not require payment in *Crenshaw v. Florida Farm Bureau*, 489 So.2d 186 (Fla.App. 1st Dist.1986). At the employee's request in *Crenshaw* the employer/carrier authorized two chiropractors to provide chiropractic treatment after the employee was injured in an industrial accident. A few months later the employer/carrier sent letters to the employee deauthorizing the chiropractors and authorizing specific medical physicians. The employee did not communicate any lack of consent to the deauthorization. Two years later the employee sought payment of her chiropractic bills for treatment subsequent to the deauthorization letter. The deputy commissioner denied the claimant's request, finding that both claimant and her attorney had been advised that treatment by the chiropractors had been deauthorized by the employer/carrier, and that the claimant had at all times been

provided with adequate alternative medical care. *Id.* at 187. The court examined *Cal Kovens* and noted that in *Crenshaw* the employee did not dispute the change in medical care. The court interpreted *Cal Kovens* to apply only when the claimant [employee] disputed the change in physicians. The court found that since the employer/carrier had offered adequate alternative medical care, the deauthorization of the chiropractors was proper and the carrier was not liable for further chiropractic bills. *Id.* at 187–88.

The Court notes from *Crenshaw* the proposition that an employer or carrier can deauthorize chiropractic treatment. In other cases, the Florida court examined what treatment or alternative care was offered after deauthorization of chiropractic treatment. *See Newberg Construction Company v. Warren*, 449 So.2d 934 (Fla.App. 1st Dist.1984); *Lewis v. Town & Country Auto Body Shop*, 447 So.2d 403 (Fla.App. 1st Dist.1984); *Universal Corporation v. Lawson*, 447 So.2d 293 (Fla.App. 1st Dist. 1984). The Court finds that no Mississippi statute prevents an employer or carrier from switching physicians nor does a Mississippi statute require, as in *Cal Kovens*, a ruling of a workers' compensation commissioner before physicians may be changed.

This Court finds as persuasive argument a memorandum letter sent to all workers' compensation carriers in 1983 by the chairman of the Mississippi Workers' Compensation Commission. This memorandum letter was an effort to explain the status of payment for chiropractic services in Mississippi. The chairman acknowledged that under Section 71–3–15 of the Mississippi Code an employer must furnish medical, surgical and other treatment and

> the wording of the statute "medical, surgical and *other attendance or treatment*" implies that, absent factors which might otherwise preclude payment of treatment expenses, the injured worker may receive chiropractic services where previously authorized or consented to and reasonably required as a result of the compensable injury. Under Section 71–3–15, the employer-carrier has the

right and duty to properly choose and offer medical care and other treatment to the injured employee. In practice, the employee often requests and receives permission from a representative of the employer to see a specific chiropractor and by assenting to the employee's request for this attendance or treatment, or by failure to reject such request, the employer may have, in effect, consented to and authorized such treatment. The employer-carrier would therefore be responsible for paying for chiropractic services up to and until such time as the authorization is rejected or cancelled by the employer, or the insurance carrier, who stands in the place of the employer when compensation insurance is obtained.

The Court finds that a workers' compensation carrier has the right to deauthorize chiropractic treatments previously approved by it or by its insured, the employer, if it provides for alternative treatment. Because of this ruling the question of whether or not Jimmy Chandler, the insurance agent, authorized the chiropractic treatment is not an issue of material fact.

The basic elements which establish a prima facie case of tortious interference with a business relationship are: the existence of a valid business relation or expectancy; an intentional or willful act of the defendant; that the act was calculated to cause damage to the plaintiff in his lawful business; the absence of justification, right or lawful purpose on the part of the interferer (which constitutes malice); and resulting damages to the party whose relationship has been disrupted. *See Protective Service Life Insurance Company v. Carter,* 445 So.2d 215, 217 (Miss.1984); *see also Teale v. American Manufacturers Mutual Insurance Co.,* 687 S.W.2d 218, 219 (Mo. App.1985); 45 Am.Jur.2d *Interference* § 50 (1969). The Court concludes that since there are no genuine issues of material fact regarding the deauthorization of chiropractic treatment by the Defendant Commercial Union or the offering of alternative medical care, Commercial Union had a right to deny payment of any further chiropractic treatment after its notification letter was sent. The Plaintiff therefore fails to meet the element of absence of justification, right or lawful purpose on the part of the interferer and fails to establish a prima facie case of tortious interference with a business relationship. The Defendant Commercial Union is entitled to judgment as a matter of law on this claim.

Since Plaintiff's claim for tortious interference with a business contract fails, his claim for punitive damages thereunder fails.

Regarding the claim for punitive damages for a bad faith failure to pay, the Court notes that such a claim is allowable under a "bad faith" theory but it is not a separate claim as Plaintiff appears to assert in his complaint. The Court finds that since this is a case of first impression in Mississippi the Defendant had an arguable reason to deny payment. The Court further has found that the Defendant had no duty to continue the payments. The Court concludes that the Defendant is entitled to summary judgment on the "bad faith" claim, including punitive damages.

The Court concludes that there are no genuine issues of material fact regarding the Plaintiff's several claims and the Defendant is entitled to summary judgment as a matter of law under Federal Rule of Civil Procedure 56(c). A separate judgment will be entered accordingly.