# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01397-SCT

*PDN, INC.*

*v.*

**IVORY LORING**

| | |
|---|---|
| DATE OF JUDGMENT: | 7/31/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | G. TODD BURWELL |
| | KRISTEN A. HORTON |
| ATTORNEYS FOR APPELLEE: | STEPHANIE M. RIPPEE |
| | ROBERT A. MILLER |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 04/24/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     PDN, Inc. filed a suit against National Union Fire Insurance Company of Pittsburgh, Pennsylvania, AIG Claim Services, Inc., and Ivory Loring alleging that, as an adjuster for a workers' compensation insurance carrier, Loring tortiously interfered with PDN's business relations. Essentially, Loring refused to approve PDN's services and fees as a nursing home and physical therapy provider for two injured employees. PDN's suit contained claims for tortious interference, bad faith, breach of contract and/or bad faith refusal to pay benefits. The trial court granted Loring's motion for summary judgment as to the tortious

interference, bad faith, and breach of contract claims. Consequently, Loring was dismissed from the lawsuit. The trial court certified its judgment as final under Miss. R. Civ. P. 54(b).

¶2. On appeal, PDN raises two issues: (1) whether the trial court erred in granting summary judgment to Loring on PDN's tortious interference with business claim, and (2) whether the trial court erred in granting summary judgment to Loring on PDN's bad faith claim.

## FACTS

¶3. In April, 1987, James Dickens sustained severe and permanent injuries when his automobile was struck by a train. At the time of the accident, Dickens was working in the course of scope of his employment with RPM Pizza, Inc. As a result of the accident, Dickens was left in a permanent vegetative state requiring twenty-four hour a day home nursing. RPM's workers' compensation carrier, National Union, agreed to continue paying all of Dickens's future medical, hospital and drug expenses. On behalf of National Union, AIG manages Dickens's claims for benefits, including authorization and payment of his medical expenses. AIG assigned Dickens's claim to Loring, an AIG employee and claims representative. PDN, a provider of home nursing care, has provided home nursing care to Dickens since his release from the hospital.

¶4. In July of 1996, PDN and AIG entered into an oral contract regarding the cost of home nursing care. AIG agreed to pay $15.00 per hour for services provided by nurse aides. This rate was paid from August of 1996 until March of 1997. In March of 1997, National Union ceased or began reducing payments to PDN based upon the advice of AIG. However, in November of 1997, based on the advice of AIG, payment resumed at the contracted rate. Again, in January of 1998, AIG advised National Union to cease or reduce the payments. Loring was the individual claims adjuster who advised National Union

to cease or reduce the payments, based on her assessment that there was no contract. Despite PDN's demand to Loring and AIG for payment, Loring stood by her refusal to pay PDN for the services.

¶5. On January 17, 1999, another AIG workers' compensation claimant who required home health care, Conrad Balius, was referred to PDN. AIG assigned Balius's claim to Loring. Apparently, a PDN representative spoke with Loring, and Loring verified that Balius was covered. However, upon learning that PDN was the provider of home health care to Balius, Loring stated that she would not work with PDN. As a result, PDN lost Balius as a patient.

¶6. Thus, PDN asserts that Loring willfully and intentionally interfered with its business relations. Loring contends that while performing a routine cost comparison, she simply found a less expensive provider of home nursing and physical therapy services. In addition, Loring asserts that regardless of whether she had an ulterior motive in declining to do business with PDN, she was entitled to decline to use PDN and was entitled to a judgment as a matter of law on this claim. Loring contends that her recommendation that AIG use another provider of nursing home and physical therapy services was not actionable as tortious interference because it was merely a business choice and not tortious interference with business relations. PDN asserts that Loring's contention is false.

¶7. PDN contends that the negotiation with AIG for the contract to provide home care services to Balius was already agreed upon. PDN asserts that the only reason AIG canceled the arrangements was because Loring refused to do business with PDN in an attempt to punish PDN for its previous demands for payment on Dickens's claim. In addition, PDN asserts that AIG negotiated the same rates, not any less than PDN's rates, with the alternate provider, Quality Home Health. Quality subsequently agreed to reduce its rates.

## DISCUSSION

3

¶8.    We review summary judgments de novo. ***Crum v. Johnson***, 809 So.2d 663, 665 (Miss. 2002). Motions for summary judgment are to be viewed with a skeptical eye, and if the trial court should err, it is better to err on the side of denying the motion. ***Id***. On the other hand, the motion should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof. ***Buelow v. Glidewell***, 757 So.2d 216, 220 (Miss. 2000).

### I.    TORTIOUS INTERFERENCE WITH BUSINESS CLAIM.

¶9.    Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted. ***MBF Corp. v. Century Business Communications, Inc.***, 663 So.2d 595, 598 (Miss. 1995). PDN asserts that it has offered evidence of each of these elements, while Loring argues that even if PDN's allegations were true, the insurance carrier has the right to choose who will provide home nursing and physical therapy services to an injured employee. On this basis, Loring submits that her acts were not without right or justifiable basis.

¶10.    Miss. Code Ann. § 71-3-15(1) (Rev. 2000) provides that the employee has the right to chose one competent physician and such other *specialist* to whom he is referred by his physician. In addition, section 71-3-15(1) provides that referrals by the chosen physician shall be limited to one physician within a specialty or sub-specialty. Based on this statute, along with the definitions provided in the Fee Schedule to Miss. Code Ann. § 71-3-15(3), PDN asserts that the injured employee, and subsequently his physician, has the right to choose his medical care provider, not the employer or its carrier. Therefore, PDN contends

4

that since Balius's doctor referred him to PDN, Loring has no authority or right to require that Balius be treated by anyone other than PDN.

¶11.    The Fee Schedule defines a specialist as:

> 41. Specialist means a board-certified practitioner, board-eligible practitioner, or a practitioner otherwise considered an expert in a particular field of healthcare service by virtue of education, training, and experience generally accepted by practitioners in that particular field of healthcare service.

Miss. Workers' Comp. Comm'n Fee Schedule, Med. Cost Containment Rules C . ¶ 41 (Jan. 1, 1998). Also, the Workers' Compensation Commission defines a practitioner as "a person licensed, registered, or certified as an ... nurse ... physical therapist." *Id*. ¶ 32.

¶12.    In further support of its argument, PDN cites *Dolenga v. Aetna Cas. & Sur. Co.*, 463 N.W.2d 179 (Mich. Ct. App. 1990), for its holding that a rehabilitation service provider's intentional interference with business relations claim against a workers' compensation carrier was viable when the carrier refused to authorize services by such provider and insisted that the injured employee receive rehabilitation services from a provider chosen by the carrier. That court stated, "since it is the claimant who receives the medical treatment or rehabilitation services, it ought normally to be the claimant who chooses the provider of those services." *Id*. at 181.

¶13.    Loring, on the other hand, states that it is common practice for worker compensation insurers, in search of cost savings, to select the provider of such services. Loring contends that Miss. Code Ann. § 71-3-15 does not provide that the injured employee has the right to choose other treatment and nursing services not administered under the direction of a physician. Otherwise, Loring contends, the Legislature would have expressly provided that injured employee could not only choose his doctor, but also his nurse. Also, Loring states that PDN's use of the Fee Schedule, as support for its argument that nurses are

specialists, stretches the intent of the Legislature, since it did not define "specialist" in § 71-3-15 to include physical therapists and nurses.

¶14.    In *Norville v. Commercial Union Ins. Co.*, 690 F. Supp. 558 (S.D. Miss. 1988), *aff'd mem.* 866 F.2d 1419 (5th Cir. 1989), a Mississippi federal court held that the carrier had a right to de-authorize chiropractic treatment which is "other attendance or treatment" and require the injured worker to switch to a physician.  That court held that the insurer was entitled to summary judgment on the chiropractor's claim of tortious interference with business relations.  690 F. Supp. at 561-62.  In that case, the court stated that "[u]nder Section 71-3-15, the employer-carrier has the right and duty to properly choose and offer medical care and other treatment to the injured employee."  We agree with this analysis.

¶15.    We conclude that PDN's argument that AIG, and its employee, Loring, cannot choose which home nursing services provider to pay for is without merit.  The language in section 71-3-15 does not provide that the injured employee has the right to choose his nurse or therapist, unless that nurse or therapist was ***specifically chosen by a doctor who remained to administer care*** to the injured employee.  The record here does not reveal that the doctor remained to administer care to the patient; he merely ***referred*** Balius to a home health care provider.  Thus, this issue is without merit.

## II.    BAD FAITH CLAIM.

¶16.    According to PDN, it has been held that a claims representative, such as Loring, could be held independently liable for failure to investigate a claim when her conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.  ***Dunn v. State Farm Fire & Cas. Co.***, 711 F. Supp. 1359, 1361 (N.D. Miss. 1987).  PDN asserts that Loring's failure or refusal to interview adjusters who worked on Dickens's file (to discover the existence of the oral contract) and her failure to interview

6

the PDN employee who negotiated Dickens's contract constitutes a bad faith breach of contract and/or a bad faith refusal to pay benefits.

¶17.    Loring asserts that she cannot be held liable for a bad faith breach of contract because she was not a party to the contract. Loring states that to hold otherwise would subject employees to personal liability to all vendors with which the employer dealt. Loring correctly relies on the rule of law which states that an agent acting on behalf of his employer is not personally liable for breaching his employer's contracts. *Gardner v. Jones*, 464 So.2d 1144, 1151 (Miss. 1985).

¶18.    Nothing in the record reveals that Loring should be held personally accountable on the oral contract, as she is merely an employee of AIG, and her actions do not rise to the level of bad faith referred to in *Dunn*. This issue is without merit.

## CONCLUSION

¶19.    Based on the foregoing reasons, this Court affirms the order granting summary judgment for Ivory Loring.

¶20.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶21.    I dissent to the majority's finding that summary judgment was proper. I find that since a doctor had ordered the home health care as part of Dickens's at-home care, under the circumstances the proper procedure for Loring was to file for a workers' compensation hearing before terminating the scheduled care. Having failed to follow proper procedure under this State's Workers' Compensation Law, Miss. Code Ann. § 71-3-47 (Rev. 2000), Loring should be found liable. If she wanted to escape potential

7

liability, she should have followed the proper statutory procedure and requested a hearing. Therefore, I would reverse and remand.

¶22.    For these reasons, I dissent.