DOLENGA v AETNA CASUALTY & SURETY COMPANY

Docket No. 113198. Submitted July 17, 1990, at Detroit. Decided October 2, 1990.

Richard Bobier sustained a rotator cuff injury in the course of his employment and while working at a plant of The Detroit Edison Company whose workers' compensation insurer was Aetna Casualty & Surety Company. Bobier was treated by an orthopedic surgeon, Michael Baghdoian, who referred Bobier to R. Gary Dolenga and Disability Services, Inc., doing business as Professional Rehabilitation Associates, for vocational rehabilitation services. Aetna, through its employee, Joanne Shankin, refused Professional Rehabilitation's request for authorization for a rehabilitation evaluation of Bobier and informed Professional Rehabilitation that Aetna would arrange for rehabilitation services to Bobier by a different provider. Dolenga and Disability Services, Inc., brought an action in the Wayne Circuit Court against Aetna and Shankin, claiming that defendants had tortiously interfered with plaintiffs' business relationship with Bobier. The court, Michael J. Connor, J., granted summary disposition in favor of defendants, ruling that pursuant to § 319 of the Workers' Disability Compensation Act, MCL 418.319; MSA 17.237(319), it is the insurer who has the right to choose the provider of rehabilitation services to a claimant. Plaintiffs appealed.

The Court of Appeals held:

1. A workers' compensation insurer may not unilaterally reject a claimant's choice of vocational rehabilitation services provider and insist upon its own choice of provider. Rather, where a claimant selects a particular provider on his own or upon referral to the provider by a third party, the insurer must either accept the claimant's choice or instigate the dispute resolution procedures provided under § 319 to raise its objection to the provision of vocational rehabilitation services or to the claimant's choice of provider.

2. One of the elements of tortious interference with a busi-

REFERENCES

Am Jur 2d, Workmen's Compensation § 387.

See the Index to Annotations under Options; Physicians and Surgeons; Vocational Training; Worker's Compensation.

ness relationship is that the alleged tortfeasor must have acted with an improper motive. Here, the trial court erroneously granted summary disposition, given the existence of a genuine issue of material fact concerning whether defendants had acted with an illegal, unethical or fraudulent motive in interfering with the business relationship between plaintiffs and Bobier.

Reversed and remanded.

WORKERS' COMPENSATION — VOCATIONAL REHABILITATION SERVICES — CHOICE OF PROVIDERS.

A workers' compensation insurer may not unilaterally reject a claimant's choice of vocational rehabilitation services provider and insist upon its own choice of provider; rather, where a claimant selects a particular provider on his own or upon referral to the provider by a third party, the insurer must either accept the claimant's choice or instigate the dispute resolution procedures provided under the Workers' Disability Compensation Act to raise its objection to the provision of vocational rehabilitation services or to the claimant's choice of provider (MCL 418.319; MSA 17.237[319]).

*Bellanca, Beattie & De Lisle, P.C.* (by *Frank D. Eaman*), for plaintiffs.

*Vandeveer Garzia,* (by *Robert D. Brignall*), for defendants.

Before: SHEPHERD, P.J., and SAWYER and Mc-DONALD, JJ.

PER CURIAM. Plaintiffs appeal from an order of the circuit court granting summary disposition in favor of defendants on plaintiffs' claim for tortious interference with an advantageous business relationship. Although the trial court's order fails to state under which subrule summary disposition was granted, it was presumably granted under MCR 2.116(C)(10), no genuine issue of material fact. We reverse.

Plaintiff Dolenga, through his business, plaintiff Disability Services, Inc., is engaged in providing rehabilitation services to a variety of clients, in-

cluding workers' compensation claimants. In the instant case, Richard Bobier had sustained a rotator cuff injury while in the employment of Bechtel and working at The Detroit Edison Belle River plant. Bobier was treated by Dr. Michael Baghdoian, an orthopedic surgeon. During the course of treatment, Dr. Baghdoian suggested the option of vocational rehabilitation and referred Bobier to plaintiffs. Bobier had a meeting with Dolenga and his associate, Eva Guerra.

After that meeting, Guerra sent a letter to defendant Aetna Casualty & Surety Company which requested authorization for a rehabilitation evaluation as part of Bobier's workers' compensation benefits. Defendant Joanne Shankin, a registered nurse in the employment of Aetna as a rehabilitation coordinator, responded with a letter to Guerra stating that they were denying authorization for plaintiffs to work with Mr. Bobier, that Dr. Baghdoian had no authority to make referrals for vocational rehabilitation to any vendor, and that Aetna would be making other arrangements for vocational rehabilitation, presumably with a different vendor. On the same date, Shankin sent a letter to Dr. Baghdoian noting that he had referred Bobier to plaintiffs and further directing Baghdoian and his associates to cease making any referrals to any specific rehabilitation vendors, and in particular to plaintiffs. Shankin's letter further claimed to reserve its "right" under the Workers' Disability Compensation Act to make its own referrals.

Thereafter, plaintiffs instituted the instant action on the basis of defendants' alleged tortious interference. Apparently, the Bobier matter has not been the only dispute between the parties.

Over the course of a number of motion hearings, the trial court ruled that defendants had the right

to select the rehabilitation vendor and that there was no genuine issue of material fact concerning whether defendants did anything improper in denying authorization for Bobier to work with plaintiffs and, instead, referring Bobier to a different vendor.

On appeal, plaintiffs first argue that the trial court erred in ruling that an insurance carrier has the right to select a rehabilitation vendor for the employee where the employee's physician has referred the employee to another vendor. We agree. Defendants, both in Shankin's letters to Dr. Baghdoian, and apparently others, and during the course of litigation, have maintained that a workers' compensation insurance carrier has a right to select a rehabilitation vendor for the employee. In support of this presumed right, defendants rely upon MCL 418.319; MSA 17.237(319), the provision in the compensation act which relates to rehabilitation services. Defendants' reliance is misplaced. While it is true that under that section an employee is entitled to receive rehabilitation services if necessary and, in fact, the employer may insist that the employee receive rehabilitation services, the fact that the act allows the employer or the employer's insurance carrier to voluntarily offer to provide those services does not, as defendants seem to conclude, equate to the employer or carrier having the right to select the vendor of those services. Nothing in § 319 either explicitly or implicitly grants such a right to a workers' compensation carrier.

On the other hand, neither does the act explicitly grant the right of selection to the claimant as suggested by plaintiffs. Plaintiffs rely on MCL 418.315; MSA 17.237(315), which provides that an employee has the right to select the physician of his choice after ten days from the inception of

medical care. However, since Mr. Dolenga, to our knowledge, is not a physician, this section is inapplicable.

It does, however, seem reasonable to conclude that the person receiving the services, the claimant, should normally be the person who selects the vendor. If, at that point, the employer or carrier is dissatisfied with the employee's choice of vendor, it can petition the bureau for a resolution of the dispute under MCL 418.319(2); MSA 17.237(319)(2). Both defendant Aetna and defendant Shankin misapprehend the role and authority of the compensation carrier in providing these benefits. That role is to pay for the treatment, not provide it. Ultimately, since it is the claimant who receives the medical treatment or rehabilitation services, it ought normally to be the claimant who chooses the provider of those services, subject to the dispute resolution procedures under the act if the claimant's choice is objectively unreasonable. Plaintiffs are correct to the extent that they point out that § 315 at least implicitly recognizes that it is the worker's choice of whom to utilize for the providing of services, not that of the employer or carrier. The trial court's conclusion to the contrary was incorrect.

Of course, to say that it is the employee's right to choose the provider of a particular service does not compel the conclusion that the employer or carrier cannot voice an opinion on which provider a claimant should consider for those services. That is, there is nothing wrong, as a general proposition, with the carrier recommending to a claimant a particular provider. For that matter, it is probably to be expected that the carrier would at least initially select the provider when it does offer the rehabilitation services and insist that the employee take advantage of those services as is the

carrier's right under § 319. We are not, however, faced with a situation in this case where the carrier instigated the utilization of rehabilitation services. We are cognizant of the fact that defendants represent in their brief on appeal that they voluntarily offered rehabilitation services. We are also cognizant that this is a flagrant misrepresentation of the facts of this case by defendants. The undisputed truth of the matter is that the claimant, in essence, initiated the issue of utilizing rehabilitation services upon the recommendation and referral of his treating physician. The only "voluntary offer" posed by defendants was defendant Shankin's offer to have a different vendor provide rehabilitation services to the claimant following her refusal to authorize the providing of those services by plaintiffs.[1]

For the above reasons, we conclude that neither an employer nor a compensation carrier has the right to unilaterally reject a claimant's choice of a rehabilitation services vendor and insist upon its own choice by way of denying authorization to the vendor selected by the claimant and referring the claimant to the carrier's own vendor. Rather, where, as here, a claimant initiates the issue of rehabilitation services, and nominates his own vendor, either by way of his own selection or acceptance of a referral by a third party, the proper procedure under the compensation act would be for the carrier to either accept the request by the claimant to receive rehabilitation services from that particular vendor or, if the

[1] We should also note that we are not entirely convinced of defendants' premise that, even if they were to have voluntarily offered the services, they could choose the vendor. Certainly defendants could have recommended a vendor as part of the offer, but we are not convinced they would have the right to insist upon that vendor if the claimant, for whatever reason, indicated a preference for a different vendor. However, since those are not the facts of the case before us, we need not resolve that question.

carrier has objections to either the providing of rehabilitation services at all or to the vendor selected, the carrier may instigate the dispute resolution procedures under the act. The carrier should not, however, simply deny the authorization for the vendor selected by the patient and substitute its own vendor.

The conclusion of what is the proper procedure under the compensation act does not, however, resolve the question whether defendants engaged in the tortious interference with an advantageous business relationship. Rather, it only supports the conclusion that defendants were not enforcing their rights under the compensation act to make a choice of vendor. It is still necessary for plaintiffs to establish that the tort, and each of its elements, had been committed. In this regard, the parties dispute whether plaintiff can come forth with the facts to establish one of the necessary elements of the tort of tortious interference with a business relationship, namely, whether the tortfeasor acted with an improper motive. In this context, improper means illegal, unethical or fraudulent. See *Michigan Podiatric Medical Ass'n v Nat'l Foot Care Program, Inc,* 175 Mich App 723, 735-736; 438 NW2d 349 (1989). Defendants' version of the facts certainly does not show an improper motive. Defendants' position is that defendant Shankin suggested to Bobier that he obtain rehabilitation services from a different vendor because, in defendant Shankin's opinion, that other vendor was better suited to provide the rehabilitation services required by Bobier.

However, since this is a matter of summary disposition, we do not accept the facts as proffered by defendants, but, rather, accept the facts in the light most favorable to plaintiffs. *Jesson v General Telephone Co of Michigan,* 182 Mich App 430, 432-

433; 452 NW2d 836 (1990). Moreover, the courts are liberal in finding the existence of a genuine issue of material fact. *Id.* at 432. Plaintiffs' theory of this case presents a much darker picture.

Specifically, plaintiffs suggest that defendants' motivation for steering Bobier away from plaintiffs and to another vendor arises not from their concern with Bobier, but with their dislike of plaintiffs and, more importantly, their inability to control plaintiffs. A review of the lower court record, including deposition evidence and affidavits, indicates that plaintiffs are in a position to present evidence that defendants choose a rehabilitation services provider on the basis of the provider's willingness to follow defendants' dictates, including the termination of services to a claimant at the request of defendants regardless of whether the claimant's need for those services has been satisfied. Plaintiffs also have evidence to suggest that their reputation in the industry is one of being a "client advocate" and pressing the needs of their clients when the carriers attempt to terminate services prematurely, or at least prematurely in plaintiffs' judgment.

If the facts are as plaintiffs paint them, defendants' motivation was certainly improper, namely, attempting to control the referral process in order to be able to control the services provided a claimant and to be able to terminate those services without regard to the claimant's right to continue to receive those services. Further, under plaintiffs' version of the facts, defendants attempted to maintain their control by silencing the voices of client advocates, such as plaintiffs, by precluding the flow of business to vendors with such a reputation. Plaintiffs' version of the facts is supported by evidence garnered through the depositions and affidavits of Dolenga and others, including evi-

dence of plaintiffs' reputation in the industry, the prior instances in which defendants sought to prevent plaintiffs from providing rehabilitation services, and a memorandum obtained during discovery written by defendant Shankin which indicated that it was defendants' position that they would never voluntarily acquiesce to plaintiffs' providing rehabilitation services.[2]

Defendants' interference with plaintiffs' business relationships is further evidenced by the letter sent by defendant Shankin to Dr. Baghdoian which falsely states that defendants have the right under the compensation act to select the vendor and that Dr. Baghdoian has no authority to make referrals. As discussed above, this is simply not true. Defendants have no right to select the vendor and Dr. Baghdoian certainly has as much of a right to make a referral as anyone else. Indeed, given his status as the claimant's treating physician, we would think he would have a greater right to make a referral choice than do defendants.

In sum, there exists a genuine issue of material fact between the parties. While defendants' interference with plaintiffs' business relationships is fairly obvious on the evidence before us, given that they successfully terminated the business relationship between Bobier and plaintiffs, the question whether defendants were acting with an improper motive remains in dispute. While it is certainly possible that a jury could conclude from the evidence garnered thus far that defendants were acting with a proper motive of assisting claimants in obtaining the best available services, there is

[2] This would seem to contradict deposition testimony by defendant Shankin that she would refer matters to plaintiffs in the "appropriate cases."

certainly evidence from which the jury could conclude that defendants were acting improperly, unethically, fraudulently, and possibly even illegally. The important point, however, is that this is a question for the jury to answer and the trial court erred in granting summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs.