**LIFELINE LIMITED NO. II, an Illinois limited partnership, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Delaware corporation, Preferred Health Care Corp., a Delaware corporation, Joseph L. Posch, Jr., an individual, and James Kinville, an individual, jointly and severally, Defendants.**

No. 92–CV–74752.

United States District Court, E.D. Michigan, S.D.

April 12, 1993.

---

Edward M. Kalinka, Robert A. Boonin, Sheldon H. Klein, Butzel Long, Detroit, MI, for plaintiff.

William A. Sankbeil, Joanne Geha Swanson, Kerr, Russell & Weber, Detroit, MI, for Conn. General Life Ins. Co.

Elaine Temesan, Schafer & Weiner, P.C., Birmingham, MI, for Joseph L. Posch, Jr.

Vivian Perry–Johnston, Dickinson Wright, Bloomfield Hills, MI, for Preferred Health/ James Kinville.

## OPINION AND ORDER

FEIKENS, District Judge.

### Introduction

Plaintiff Lifeline Limited No. II ("Lifeline") files suit against defendants Connecticut General Life Insurance Company ("Conn Gen"), Preferred Health Care Corporation ("PHC"), Joseph L. Posch, Jr., ("Posch"), and James Kinville ("Kinville") alleging two counts of tortious interference with business expectancy and one count of restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C.

In an Opinion and Order dated March 15, 1993, 821 F.Supp. 1201, I granted defendants' motions to dismiss plaintiff's antitrust claim but denied defendants' motions to dismiss plaintiff's claims of tortious interference with business expectancy. In this Opinion and Order, I revive defendants' motions to dismiss as to the claims of tortious interference. Independent of my authority to revive and revisit defendants' motions to dismiss the two tort claims, I note that a court can dismiss *sua sponte* a claim for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). *Achterhof v. Selvaggio*, No. G88–45 CA1, 1988 WL 404358, 1988 U.S. Dist. LEXIS 17822 at *8 (W.D.Mich. Oct. 25, 1988) citing *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir.1987); *Dodd v. Spokane County*, 393 F.2d 330, 334 (9th Cir.1968); *Smith v. Boyd*, 945 F.2d 1041, 1042 (8th Cir.1991); *Kicken v. Valentine Production Credit Association*, 628 F.Supp. 1008, 1012 (D.C.Neb.1984).[1]

---

1. Plaintiff cites *Eaton v. Jamrog*, 984 F.2d 760 (6th Cir.1993), for the proposition that a district

At a March 24, 1993, status conference, I notified the parties that I would revisit defendants' motions to dismiss with regards to the claims of tortious interference. In addition to previous hearings that have been held on defendants' motions to dismiss, another hearing was held on April 2, 1993, in which the viability of plaintiff's tort claims was discussed, among other things.

In this Opinion and Order, I modify those portions of my March 15, 1993, Opinion and Order in which I stated that plaintiff's claims of tortious interference with business expectancy stated claims for relief under Michigan law. Specifically, in this Opinion and Order, I dismiss plaintiff's claims of tortious interference with business expectancy because such claims fail to state claims upon which relief can be granted.

*Background*

A. Undisputed facts

Defendant Conn Gen is under contract with non-party General Motors Corporation ("GM") to perform certain delegated administrative functions on behalf of and as agent for GM as the plan administrator of the GM benefit plan ("plan"). Such a plan is an employee welfare plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.* Conn Gen administers the GM substance abuse benefit plan; GM employees and their dependents are beneficiaries under the benefit plan. As an agent for GM, Conn Gen contracts with health care providers who render the substance abuse treatment ("contract providers").

Defendant PHC is under contract with GM to perform the service of reviewing and assessing proposed contract providers; PHC does not perform the actual contracting with plan providers. PHC recommends to Conn Gen those health care providers with whom the benefit plan should contract. Defendant Kinville is an employee of PHC and is in charge of administering the substance abuse benefits program for GM. Defendant Posch is president and chief executive officer of non-party Doctors Hospital.

Plaintiff Lifeline provides in-patient treatment for persons addicted to cocaine and other chemicals. Lifeline is an Illinois limited partnership with its principal place of business in Illinois. Lifeline subcontracts with health care providers who are contract providers. Doctors Hospital, a contract provider, was the facility through which Lifeline last provided service under the benefit plan. Prior to Doctors Hospital, Lifeline subcontracted to provide substance abuse treatment at non-party Kern Hospital beginning in April 1987, changed to non-party Northwest General Hospital in April 1988, and then transferred to Doctors Hospital after June 1990. Lifeline's relationship with Doctors Hospital ended in May 1992. After the termination of the Lifeline/Doctors Hospital relationship, Doctors Hospital continued as a contract provider.

Meanwhile, in June 1991, Lifeline contracted with non-party Michigan Health Center ("MHC") to perform treatment at that facility knowing that MHC was not a contract provider. Even though Lifeline was continuing to provide in-patient substance abuse treatment at Doctors Hospital, it sought to have MHC approved as a contract provider. At the time Lifeline terminated its relationship with Doctors Hospital, it knew that MHC had not been approved as a contract provider. MHC is still not a contract provider. Plaintiff alleges, among other things, that defendants conspired to deny MHC contract provider-status. In effect, plaintiff asks this court to order Conn Gen and PHC to enter into a contract with MHC even though MHC is not a party to this suit. If this court were to order Conn Gen and PHC to contract with MHC, then because of MHC's contract with Lifeline, Lifeline would be able

court does not have the power to reconsider *sua sponte* a final order. *Eaton,* however, does not stand for such a grand proposition. *Eaton* merely said that under Fed.R.Civ.P. 60(b), a district court does not have discretion to vacate and then reenter its earlier judgment for the sole purpose of providing plaintiffs with additional time in which to appeal. *Id.* at 762. My purpose in this Opinion and Order is to redetermine whether plaintiff's claims of tortious interference state claims upon which relief can be granted. I am not interested in providing plaintiffs with additional time in which to appeal.

to enjoy the benefits of the substance abuse treatment program of the GM plan.

### B. Additional contentions of plaintiff

Plaintiff alleges that defendants prevented Lifeline from treating GM employees for cocaine abuse at MHC for two reasons: (1) to eliminate Lifeline's ability to act as an advocate for GM patients; and (2) to deter other providers from acting as patient advocates. Defendants want to eliminate patient advocates because they cost money. The expenses for treatment to which GM employees are entitled cause GM plan administrators to run the risk of losing their lucrative contracts with GM.

As plan administrator, defendant Conn Gen wanted to make itself appear as a good cost-cutter to GM at the expense of patients and providers. Instead of acting in the best interests of GM employees, Conn Gen limited benefits at the expense of patients and providers in order to obtain a renewal of its lucrative contract with GM. When Lifeline disagreed with Conn Gen's actions, Conn Gen became hostile to Lifeline for acting as an advocate of GM employees.

Until May 1992, Lifeline treated GM employees at Doctors Hospital, a hospital approved by defendants. Over a year ago, patients in the Lifeline program began making serious complaints about Doctors Hospital; conditions at the hospital deteriorated. When Lifeline told defendant Kinville about the problems at Doctors Hospital, Kinville merely telephoned the president of Doctors Hospital—defendant Joseph Posch. Kinville made no further investigation. Posch responded that the hospital was not having any problems. Kinville accepted this. Kinville was trying to force Lifeline to remain at Doctors Hospital so that when the bankrupt hospital went out of business, Lifeline would follow. As a result of the problems at Doctors Hospital, Lifeline started a second program at MHC. However, defendants refused to allow Lifeline to use MHC to treat GM employees even though an on-site inspection of MHC determined it to be a superior facility. Lifeline's program at MHC has been approved by virtually every other insurance carrier except defendants. In addition, Lifeline offered to provide its program at a lower cost than Doctors Hospital.

### Analysis

■ *Pryor v. Sloan Valve Co.*, 194 Mich. App. 556, 560, 487 N.W.2d 846 (1993), states:

In order to establish a cause of action for tortious interference with economic advantage or business relations, the following must be proven: (1) a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of a relationship or expectancy, and (4) damages.

The portion of my March 15, 1993, Opinion and Order which I now modify is the discussion pertaining to the third element of a tortious interference claim: an intentional interference inducing or causing a breach or termination of a relationship or expectancy.

■ *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 12, 483 N.W.2d 629 (1992), states:

One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.

Thus, plaintiff must either show the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice.

"A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Id.* at 12, 483 N.W.2d 629. A "wrongful act is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." *Feldman v. Green*, 138 Mich.App. 360, 371 n. 1, 360 N.W.2d 881 (1984).

Plaintiff claims that defendants' refusal to approve MHC was motivated by the retaliation for plaintiff's patient advocacy and by the personal malice of defendant Kinville of PHC towards plaintiff. Plaintiff argues that mere retaliation for patient advocacy is

something that is inherently wrongful and never justified under any circumstances. I do not agree. Actions motivated by racial animus within the scope of Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.-2102 et seq., can be deemed wrongful per se, for example. See Walker v. McDonald's Corp., No. 90–CV–40060, 1990 U.S.Dist. LEXIS 19526, at *6 (E.D.Mich. May 9, 1990). By contrast, a motivation to retaliate for patient advocacy can not rise to such a level as to be inherently wrongful under every possible circumstance.

Thus, the motivation that plaintiff alleges on the part of defendants, in order to be improper, would have to be the intent to do a lawful act with malice and unjustified in law. Improper means illegal, unethical, or fraudulent. Michigan Podiatric Medical Association v. National Foot Care Program, Inc., 175 Mich.App. 723, 735, 438 N.W.2d 349 (1989). Nonetheless, whether retaliation for patient advocacy rises to the level of a wrongful act, per se, or simply could be a lawful act with malice, plaintiff still does not state tortious claims for which relief can be granted. This is so, even construing plaintiff's allegations in a light most favorable to the plaintiff. See Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987).

As the quotation from Prysak makes clear, there must be "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law. . . ." Prysak, 193 Mich.App. at 12, 483 N.W.2d 629 (emphasis added). For example, "In order to prove the doing of an act 'with malice and unjustified in law,' plaintiff must show specific, affirmative acts which corroborate the unlawful purpose of the interferer." Liberty Heating & Cooling, Inc. v. Builders Square, Inc., 788 F.Supp. 1438, 1447 (E.D.Mich.1992) citing Feldman v. Green, 138 Mich.App. 360, 370, 360 N.W.2d 881 (1984).

In this case, plaintiff has not alleged any affirmative interference by defendants. Instead, plaintiff alleges that defendants' interference was caused by an omission: defendants' failure to enter into a contract with MHC. In essence, plaintiff argues that the only manner in which defendants could have avoided committing a tort would have been to enter into a contract with MHC. Plaintiff asks this court and our Anglo–American legal system to civilly punish defendants under our common law tort system for not entering into a contract with MHC, a stranger to this suit. Plaintiff would not be a party to that contract.

Of course, the crux of plaintiff's tort claims is that defendants did not contract with MHC because they knew that a failure to contract would financially hurt Lifeline. Indeed, because this is a motion to dismiss, I must accept plaintiff's allegation that the sole reason why defendants did not contract with MHC was to financially hurt Lifeline; defendants want to damage Lifeline because of its patient advocacy.

However, defendants' reasons for not wanting to contract with MHC are simply irrelevant. Defendants are under no duty to MHC or to plaintiff to do business with them or to help them earn money. There can be no tort where there is no duty. Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99 (1928) (Cardozo, J.). Simply put, defendants do not have to contract with MHC and their reasons for not doing so are irrelevant.

This is not to say that defendants do not owe a duty to anyone. Because of their contract with GM, defendants may be under a duty to GM, the United Auto Workers ("UAW") Union, and/or GM plan beneficiaries to seek plan providers who provide quality health care at reasonable prices. An offshoot of such a duty may be that defendants have to seek high quality treatment for cocaine addiction at a reasonable price for GM plan beneficiaries, something which plaintiff claims it provides. If defendants have breached such a duty, it is a duty defendants have breached not as to plaintiff but as to GM, the UAW, or the plan beneficiaries. It is all, or at least one, of these latter three entities who would have standing to sue defendants for a breach of duty.

Indeed, the intended third-party beneficiaries of any contract between MHC and defendants would be GM plan beneficiaries and not plaintiff. Undoubtedly, plaintiff would benefit from a contract between MHC and

defendants; this is because plaintiff already has a contract with MHC. However, plaintiff would be an unintended, incidental beneficiary of a contract between MHC and defendants; as such, plaintiff would have no right to enforce a contract between MHC and defendants. *Restatement (Second) of Contracts § 315* (1979); *Restatement (Second) of Contracts § 302 comment (e)* (1979).[2]

Further, and significantly, MHC is not a party to this suit. We do not know its position, nor need we. In essence, plaintiff is asking this court and our legal system to force two distinct business entities (*i.e.*, MHC and defendants) to contract with each other; one of these entities does not wish to contract (*i.e.*, defendants) and the other entity may or may not wish to contract (*i.e.*, MHC).

Last, I note that plaintiff argues that the motivation for defendants' interference is the same as the motivation found wrongful in *Dolenga v. Aetna Casualty & Surety Co.*, 185 Mich.App. 620, 463 N.W.2d 179 (1990), and that, therefore, dismissal of plaintiff's claims is improper just as it was in *Dolenga.* In other words, Lifeline relies on *Dolenga* for the proposition that dismissal of its tort claims is inappropriate since only a jury can determine if the motivation of defendants' was improper.

In *Dolenga,* an injured worker was treated by a physician who suggested that the injured worker visit a rehabilitation service (the plaintiff in *Dolenga*). The injured worker's injury was covered by workers' compensation. After a meeting between the injured worker and the rehabilitation service, the rehabilitation service sent a letter to defendant Aetna, the workers' compensation insurer, requesting authorization for a rehabilitation evaluation of the injured worker. In other words, the rehabilitation service asked the insurance company if it would pay for treatment provided to the injured employee. Aetna responded that the physician had no authority to make referrals to vocational rehabilitation and that only Aetna had the authority to make referrals; Aetna said it would refer the injured employee else-

where. Plaintiff sued for tortious interference with a business relationship. Plaintiff claimed that defendant steered patients away from the rehabilitation service because the service was advocating the rights of patients to obtain treatment that they needed. Aetna argued that it had a legitimate reason for steering patients away from the rehabilitation service.

First, the Michigan Court of Appeals held that a workers' compensation insurer may not unilaterally reject a claimant's choice of vocational rehabilitation services provider and insist upon its own choice of provider. Here, it is undisputed that defendants have the appropriate and proper authority to inform GM plan beneficiaries at which hospitals they can receive reimbursable treatment.

Second, and more important for the situation at hand, the court held that the rehabilitation service had a claim for tortious interference which could not be dismissed on summary judgment just because the defendant claimed to have a legitimate reason for its actions. This was because the explanation of the plaintiff and the defendant as to the motivation for interference differed, and there were factual issues in dispute.

In the case at hand, plaintiff claims defendants acted improperly, and therefore tortiously, because it is a patient advocate, while defendants claim they acted with a legitimate business purpose. However, the motion before me is not a motion for summary judgment but for dismissal for failure to state a claim upon which relief can be granted. Thus, I do not decide whether defendants' motivations were legitimate; instead, I must view plaintiff's allegation of improper motivation in a light most favorable to it.

Even if defendants have an improper motive, they have failed to act affirmatively based on such a motive; thus, plaintiff's tort claims fails. In *Dolenga,* no party was asking the court to make a contract between defendants and a non-party to the lawsuit; such is the prayer here. Also in *Dolenga,* the question was not presented whether de-

**2.** Plaintiff has not alleged or argued that it would have been an intended beneficiary under such a contract.

fendant Aetna had to enter into a contract with a provider of rehabilitation services. The question presented was merely whether a court, on a summary judgment motion, can say as a matter of law that it was not improper for defendant to steer one particular claimant away from plaintiff's services solely because plaintiff acted as a patient advocate.

### Conclusion

In sum, plaintiff's claims of tortious interference with business expectancy fail to state a claim upon which relief can be granted and are hereby DISMISSED.

IT IS SO ORDERED.