STATE BANK OF STANDISH v CURRY

Docket No. 111575. Submitted January 16, 1991, at Lansing. Decided
May 22, 1991; approved for publication August 14, 1991, at 9:05
A.M. Leave to appeal sought.

State Bank of Standish brought an action for claim and delivery
in the Iosco Circuit Court against Robert Curry and Kathleen
Curry, doing business as Ev Wal Farms, seeking to obtain
collateral pledged in conjunction with a promissory note on
which the defendants had defaulted. The defendants counter-
claimed, asserting promissory estoppel, breach of duty of good
faith and fair dealing, fraud, and duress in connection with the
plaintiff's failure to grant them another loan that they alleged
was promised before they defaulted on the promissory note.
The court, J. Richard Ernst, J., summarily dismissed all the
defendants' counterclaims, except the promissory estoppel
claim, and ruled that there were no defenses to the plaintiff's
action for claim and delivery. The court withheld entry of a
judgment pending trial on defendants' counterclaim of promis-
sory estoppel. A jury returned a verdict in favor of the defen-
dants and awarded them damages, from which was set off the
balance owed on the promissory note. The plaintiff appealed,
claiming error in the trial court's denial of its motions for
directed verdict and judgment notwithstanding the verdict with
respect to the defendants' counterclaim of promissory estoppel.
The defendants cross appealed, claiming error in the trial
court's dismissal of their remaining counterclaims.

The Court of Appeals *held:*

1. The trial court erred in denying the plaintiff's motions for
directed verdict and judgment notwithstanding the verdict with
respect to the counterclaim of promissory estoppel; the judg-
ment in favor of the defendants on that counterclaim must be
reversed. The defendants failed to establish an essential ele-
ment of promissory estoppel, i.e., a definite and clear promise

REFERENCES

Am Jur 2d, Contracts § 120; Damages §§ 48, 83; Estoppel and
Waiver §§ 48, 49; Fraud and Deceit §§ 57, 58, 63; Fright, Shock,
and Mental Disturbance § 33.
Comment Note—Promissory estoppel. 48 ALR2d 1069.

that the plaintiff reasonably should have expected would induce the subsequent actions taken by the defendants.

2. The trial court did not err in dismissing the counterclaim of breach of good faith and fair dealing. A bank's decision to not issue a new loan to a customer, in the absence of an agreement or commitment, does not fall within the purview of MCL 440.1203; MSA 19.1203, which provides that every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement.

3. The trial court did not err in dismissing the counterclaim of fraud. An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact. Because the alleged misrepresentations in this case related to future conduct, there was no actionable fraud.

4. The trial court did not err in dismissing the counterclaim of duress, which essentially was a claim for damages for emotional distress stemming from a breach of contract. Damages for emotional distress may not be awarded for breach of a commercial contract.

Affirmed in part and reversed in part.

1. CONTRACTS — PROMISSORY ESTOPPEL.

Promissory estoppel requires proof of a promise that the promisor reasonably should have expected would induce action of a definite character on the part of the promisee, and which in fact produced reliance or forbearance of that nature, in circumstances requiring that the promise be enforced if injustice is to be avoided.

2. FRAUD — CONTRACTS — FUTURE PROMISES.

An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact; future promises are contractual and cannot be the basis of an action for fraud.

3. CONTRACTS — BREACH OF CONTRACT — DAMAGES — EMOTIONAL DISTRESS.

Damages for emotional distress may not be awarded for breach of a commercial contract.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Kenneth W. Kable* and *Scott C. Strattard*), for the plaintiff.

*Cubitt, Cubitt & Trowhill* (by *H. Dale Cubitt*), for the defendants.

Before: Neff, P.J., and Shepherd and McDon-
ald, JJ.

Per Curiam. Plaintiff and counterdefendant
State Bank of Standish appeals as of right a
judgment entered in favor of defendants and coun-
terplaintiffs Robert and Kathleen Curry. The Cur-
rys cross appeal the trial court's order granting
summary disposition to the bank with respect to
their claims of breach of a duty of good faith and
fair dealing, fraud, and duress. We reverse in part
and affirm in part.

The Currys were dairy farmers who also grew
crops to feed their herd. Beginning in 1975, the
Currys obtained operating loans from the bank for
the purpose of purchasing seed, fertilizer, and
chemicals for planting. By early 1986, Robert
Curry claims, he had become somewhat discour-
aged with dairy farming and was considering par-
ticipating in a government buyout program
through which he would essentially be paid for
staying out of the dairy-farming business for five
years. In January and February of 1986, Curry
claims, he went to the bank to discuss this issue,
posed the question "Are you with me or against
me?" to his loan officer, and was told "We're with
you."

By early April 1986, the Currys had submitted
forms to the bank indicating, among other things,
that their projected operating costs would be ap-
proximately $20,000, but the loan officer, Robert
Garry, had not yet reviewed their application. Mr.
Curry at that time also inquired whether he could
borrow an additional $5,000 to tile a field. Also at
that time, the Currys were informed by the bank
of errors and omissions in the forms they had
submitted. No corrected forms were ever submit-
ted. The Currys, believing they would get a loan

from the bank, proceeded to purchase seed and supplies, though their corn planting was delayed because they needed cash to pay for chemicals necessary for the corn crop and had not yet received funds from the bank.

In mid-May, the Currys were informed that the bank would not grant them a loan. The Currys did not attempt to obtain the necessary funds elsewhere and claimed that as a result of the bank's failure to issue the 1986 operating loan, they incurred substantial economic loss. They also defaulted on an outstanding promissory note to the bank, resulting in the bank's filing of this action for claim and delivery.

The Currys then filed a countercomplaint, alleging, under theories of promissory estoppel, breach of the bank's duty of good faith and fair dealing, fraud, and duress, that they had relied on what they claimed to have been the bank's promise to issue them a loan and that, as a result of the bank's breaking that promise, they suffered both economic and emotional injury. As noted previously, summary disposition was granted to the bank pursuant to MCR 2.116(C)(8) with respect to all the counterclaims except the one premised on promissory estoppel. The latter was also the sole issue submitted to the jury at trial. The subsequent verdict in the Currys' favor was then set off against the amount owed the bank on the promissory note (the court having previously determined there was no defense to the bank's claim and delivery action), resulting in a judgment for the Currys in the amount of $56,243.44.

The bank contends on appeal that the trial court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict because, even assuming the Currys were told that the bank was "with" them or would "support"

them, such representations did not amount to a definite and clear promise to issue a loan such as would support a claim of promissory estoppel. We agree.

Promissory estoppel substitutes for the consideration necessary to form a contract in cases where there are no mutual promises, thus enabling the promisee to assert a claim against the promisor independent of any other claim the promisee may have against the promisor. *Huhtala v Travelers Ins Co*, 401 Mich 118, 133; 257 NW2d 640 (1977). To establish such a claim, the Currys were required to prove that there was a promise made by the bank, which the bank reasonably should have expected to induce action of a definite character on the part of the Currys, which in fact produced reliance or forbearance of that nature, under circumstances that the promise must be enforced if injustice is to be avoided. *Parkhurst Homes, Inc v McLaughlin*, 187 Mich App 357, 360-361; 466 NW2d 404 (1991). The sine qua non of this theory though is a promise that is definite and clear. *McMath v Ford Motor Co*, 77 Mich App 721, 726; 259 NW2d 140 (1977). Yet, it is this element that is lacking here.

The only evidence with respect to this subject came from the testimony of Robert and Kathleen Curry. Mr. Curry claimed that when he went to the bank to discuss whether he should stay in dairy farming or leave it, he asked whether the bank would support him and was told "We're with you." Nonetheless, there was no evidence of the exact nature of the "support" the Currys felt they would be given and, indeed, no evidence of a promise to extend a loan. There was no testimony regarding the proposed terms of a loan or even a specific amount, only what the Currys requested. Of significance is the fact that the terms of an

operating loan were subject to change from year to year, not only with respect to the principal and interest rate, but also with respect to the conditions concerning repayment. While it is not difficult to understand how the Currys may have felt the "support" they believed they were assured of meant the approval of their loan application, there was no clear and definite promise of a loan sufficient to warrant their subsequent purchases and actions and, consequently, insufficient evidence to establish their theory of promissory estoppel. Though the Currys' past dealing with the bank may have bolstered their belief that the bank would issue them a loan, this prior relationship cannot support a claim of promissory estoppel, particularly in the absence of an actual promise by the bank on which the Currys could be expected to rely. *Ho v General Motors Corp,* 661 F Supp 618, 619 (ED Mich, 1987), aff'd 852 F2d 1287 (CA 6, 1988).

The doctrine of promissory estoppel is cautiously applied, for "too liberal an application of the concept will result in an unwitting and unintended undermining of the traditional rule requiring consideration for a contract. This is particularly true where the promise is a loan of money." *Malaker Corp Stockholders Protective Committee v First Jersey Nat'l Bank,* 163 NJ Super 463, 484; 395 A2d 222 (1978), cert den 79 NJ 488; 401 A2d 243 (1979). The evidence adduced at trial in this matter was insufficient to support the Currys' claim; the trial court erred in denying the bank's motions for directed verdict and judgment notwithstanding the verdict.

We next address the issues raised by the Currys in their cross appeal, which concern the trial court's granting the bank summary disposition of their remaining counterclaims. Summary disposi-

tion was granted pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted. A motion brought under this subrule tests the legal sufficiency of a claim by the pleadings alone. *Parkhurst Homes, supra,* p 360. All factual allegations in support of the claim are accepted as true, as well as any inferences that can be drawn from those facts. *Id.* The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Id.*

The first allegation we must address is the Currys' claim that "the bank, in its business relationship over the years with counterplaintiffs, had a duty of good faith performance and fair dealing which it breached" by refusing to extend an operating loan in 1986. The Currys cite MCL 440.1203; MSA 19.1203 as authority under which such a duty should be imposed upon the bank, but a bank's decision to not issue a new loan to a customer, in the absence of an agreement or commitment, does not fall within the purview of the Uniform Commercial Code. Nor are we willing to impose such a duty on the bank merely because it had issued loans to the Currys in years past. The Currys have referred us to no cases holding to the contrary and, consequently, we find that the trial court properly granted summary disposition of this count of the countercomplaint.

Count II of the countercomplaint alleged that the bank's action, in assuring the Currys that they had the bank's continued cooperation in obtaining financing, constituted fraud in that the bank knew or should have known that it did not intend to keep its promise. The trial court premised dismissal of this claim on a finding that any alleged representation by the bank amounted to a future promise and, as such, did not constitute fraud. We

agree with that holding. Even assuming that the bank knowingly made a false representation, the representation related to future conduct. As our Supreme Court stated in *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976), an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact. Future promises are contractual and cannot be the basis of an action for fraud.

Count III of the countercomplaint alleges that the bank's conduct in both denying the loan and then filing an action to recover on an outstanding debt "constituted a scheme to intentionally place [the Currys] under great duress and to force them out of dairy farming." The trial court interpreted this allegation as essentially a claim for emotional damages stemming from a breach of contract and concluded that any contract between the bank and a farming enterprise was a commercial contract, the breach of which would not give rise to emotional distress damages. If this is a correct interpretation of the claim, then the trial court's ruling was correct. See *Kewin v Massachusetts Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980). The Currys contend on appeal, however, that they alleged tortious conduct on the part of the bank, thereby giving rise to a claim for noneconomic damages. Having rejected the only claim sounding in tort, that of fraud, we must likewise reject the Currys' attempt to obtain damages for emotional distress.

In sum, the judgment in favor of defendants and counterplaintiffs is reversed and the trial court's order granting partial summary disposition to plaintiff and counterdefendant is affirmed.