ALLENDALE MUTUAL INSURANCE COMPANY; Arkwright Mutual Insurance Company; The Scott Fetzer Company; Affiliated FM Insurance Company, a Stock Insurance Company organized under the laws of Rhode Island; Sanford Corporation, an Illinois corporation; and Newell Company, a Delaware corporation, Plaintiffs,

v.

TRIPLE–S TECHNOLOGIES, INC.; Triple–S Plastics, Inc.; Sonitrol of Kalamazoo, Inc., a Michigan corporation aka Kalamazoo Security Systems, Inc.; Securitec, Inc., a Michigan corporation, Defendants.

TRIPLE–S PLASTICS, INC.,
Third–Party Plaintiff,

v.

SONITROL OF KALAMAZOO, INC., also known as Kalamazoo Security Systems, Inc.; Kalamazoo Security Systems, Inc., jointly and severally; Securitec, Inc., a Michigan corporation, jointly and severally, Third–Party Defendants.

SONITROL OF KALAMAZOO, INC. aka Kalamazoo Security Systems, Inc.,
Cross–Claimant,

v.

SECURITEC, INC., Cross–Defendant.

No. 1:92:CV:860.

United States District Court,
W.D. Michigan.

Sept. 14, 1993.

Ronald G. Musto, Ronald G. Musto, Law Office, Grand Rapids, MI, Richard Lee Norris, Raymond Lee Faust, Norris, Choplin & Schroeder, Indianapolis, IN, for Allendale Mut. Ins. Co., Arkwright Mut. Ins. Co., The Scott Fetzer Co., Affiliated FM Ins. Co., Sanford Corp., Newell Co.

Peter A. Smit, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Triple–S Technologies, Inc., Triple–S Plastics, Inc.

David S. York, York & Miller, P.C., Kalamazoo, MI, for Sonitrol of Kalamazoo, Inc., aka Kalamazoo Security Systems, Inc.

Carole D. Bos, M.J. Stephen Fox, Gwen E. Buday, Buchanan & Bos, Grand Rapids, MI, for Securitec, Inc.

Robert R. Lennon, Miller, Johnson, Snell & Cummiskey, Kalamazoo, MI, David S. York, York & Miller, P.C., Kalamazoo, MI, for Sonitrol of Kalamazoo, Inc.

## OPINION

ENSLEN, District Judge.

█ The matter before the Court is third-party Securitec, Inc.'s amended motion to dismiss the third-party complaint. Federal Rule of Civil Procedure 12(c) provides that if the Court considers evidence presented beyond the pleadings, the motion should be considered one for summary judgment pursuant to Rule 56. In this case, the parties have presented and the Court has reviewed evidentiary documents beyond the pleadings. In addition, the parties have had adequate opportunity to present all material pertinent to a Rule 56 motion. Accordingly, I have reviewed the motion brought pursuant to Rule 56.

### Facts

On February 17, 1990, a fire destroyed much of Triple–S Plastics, Inc.'s ("Triple–S") facility. The fire also damaged or destroyed property owned by Triple–S customers. Those businesses were reimbursed by their insurers, who are suing Triple–S for the loss in the present diversity action. In turn, Triple–S filed a third-party action against two security companies.

The present movant, Securitec, contracted with Triple–S to provide security and fire alarm protection services.[1] The parties agree that on May 12, 1989, a Securitec employee disconnected the entire security and fire alarm protection system at Triple–S. However, the parties dispute whether that action went beyond what Triple–S requested. Securitec maintains that Triple–S asked for the whole system to be disconnected because it was remodeling, and that it did not ask that it be reconnected until after the fire. Triple–S asserts that it only asked that the part of the *security* (as opposed to fire) system affecting the front offices be discon-

nected, and that the fact that it continued to pay maintenance bills led it to believe that part of the system remained intact.

Triple–S' third-party complaint contains claims against Securitec for breach of contract/warranty, negligence, and fraud.

### Discussion

#### Subject Matter Jurisdiction: Amount in Controversy

The first part of Securitec's motion claims that this Court is without subject matter jurisdiction to hear this cause of action because the Court has diversity jurisdiction under 28 U.S.C. § 1332 only when the amount in controversy is greater than $50,000. The basis for this claim is Securitec's argument that Triple–S cannot recover more than $250, the limit established by the contract's liquidated damages clause.

The procedural premise of this argument is off-base. As evinced by the cover page of Securitec's own brief, all the third-party plaintiffs and defendants are Michigan citizens. Therefore, if Securitec was under the impression that third-party claims were required to meet the standards set by § 1332, instead of writing on the amount in controversy, it could have written a one sentence brief pointing out the lack of diversity. Alternatively, if it understood that diversity of citizenship was not required for a third-party complaint, the next logical step is to determine the source of the Court's jurisdiction over such a claim.

Rule 14(a) permits a defendant to bring a third-party complaint against a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff "[a]t any time after commencement of the action". However, the inquiry cannot stop at Rule 14. As the Supreme Court noted in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978), Rule 14(a) cannot answer jurisdictional questions, because the Federal

---

1. Triple–S entered into the contract with Charles Services, Inc. on December 1, 1983. The contract was thereafter assigned by Charles Services to Securitec in August, 1988. Neither party challenges the validity of this assignment.

Rules of Civil Procedure can neither create nor withdraw federal jurisdiction.

Before 1990, the Court would have based its exercise of jurisdiction over Triple–S' third-party complaint on a doctrine known as ancillary jurisdiction. *E.g., Kroger* at 375–376, 98 S.Ct. at 2403–04. This doctrine was a product of federal common-law, and it allowed federal courts to exercise jurisdiction over claims ancillary to a primary claim with proper jurisdiction, regardless of the citizenship of the parties or the amounts in controversy. *Webb v. Just In Time, Inc.,* 769 F.Supp. 993, 998 (E.D.Mich.1991), quoting *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1253 (11th Cir.1988). *See also,* Wright, Miller & Cooper, 13 FED.PRACTICE & PROCEDURE § 3523.

In 1989, the Supreme Court's decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), put the scope of pendent and ancillary jurisdiction into question. In response to *Finley,* Congress passed 28 U.S.C. § 1367, which became effective December 1, 1990. This section codified the doctrines previously known as pendent and ancillary jurisdiction, and combined them into one category: supplemental jurisdiction. As a result, the doctrines remain basically unmodified. 28 U.S.C. § 1367(a) provides supplemental jurisdiction in the following situation:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

I find that the third-party claims form part of the same case or controversy raised by the original lawsuit in this case, and therefore it is proper for the Court to exercise supplemental jurisdiction. As a result, there is no need for the Court to reach Securitec's arguments about why Triple–S cannot meet the amount in controversy requirement. In this situation, there is none.[2]

### Negligence

Securitec's motion next asserts that Triple–S' third-party complaint fails to state a claim for negligence. Securitec correctly states that, under Michigan law, a tort action connected to a contract may only be sustained "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself." *Nelson v. Northwestern Savings & Loan Ass'n,* 146 Mich. App. 505, 381 N.W.2d 757 (1985). In other words, in order to maintain a tort action with a contract action, the tort action must allege breach of duty that is separate and distinct from the breach of contract. *Haas v. Montgomery Ward & Co.,* 812 F.2d 1015 (6th Cir.1987) (plaintiff could not maintain an action for negligent wrongful discharge because employee evaluation would not have occurred but for employment contract); *Brock v. Consolidated Biomedical Laboratories,* 817 F.2d 24 (6th Cir.1987). The question is whether the tort action would arise independent of the existence of the contract.

The negligence claim in question appears in Count II. It alleges that Securitec owed Triple–S the duty to use reasonable care in the installation, monitoring, and maintenance of the security system, and in providing guard response and emergency notification services. It then alleges that Securitec breached these duties, and was negligent in failing to maintain, monitor, and provide se-

---

**2.** Lest Triple–S take too much satisfaction from Securitec's error, I note that its third-party complaint alleges that the amount in controversy exceeds the sum of $10,000. The fact that the primary plaintiffs are claiming over one million dollars in damages against defendants leads me to believe that this was form jurisdictional pleading. If that is the case, let me point out that 28 U.S.C. § 1332 was amended *five years ago,* in 1988, and the requisite amount in controversy was increased from $10,000 to $50,000. Were the third-party complaint dependent on diversity jurisdiction, it would have been dismissed for this pleading error alone. However, because it is not, there was no need to plead the amount in controversy.

I hope the attorneys on both sides of this matter will research the legal issues in this case more carefully in the future.

curity services, and in disconnecting the system and failing to inform Triple–S that the system was disconnected.

■ Triple–S correctly points out that twice in its brief, Securitec asserted that it was not required to monitor the system to assure its functioning. However, Triple–S paid Securitec $360 a month, and a Securitec invoice dated August 18, 1989, indicates that the bill was for "Sep–Nov, 1 Quarterly Monitoring—Comm.". Counter–Plaintiff's Ex. 5. Therefore, Triple–S cleverly argues, Securitec's monitoring services were, by its own admission, extracontractual.

However, in paragraph 6 of the original contract (Counter–Defendant's Ex. A), the parties agree that Triple–S will pay the Company a quarterly fee [3] "for operating said apparatus". The term "operating" is not defined, but the concept of "operating" the alarm equipment seems to be in contrast with basic maintenance, for paragraph 4 specifies that "[a]ll ordinary expenses of maintenance and repairs shall be borne by Company". However, later in the contract, "operation" of the system is defined as Triple–S' responsibility: "it is the obligation of Subscriber, his employees or agents, to properly operate the system." Ex. A, ¶ 14. The only time the word monitoring is used in the contract is in paragraph 15, which contains the liquidated damages clause. It states that the Company's liability shall be limited to $250 if it is found liable due to "a failure of Company to perform *any of the obligations herein,* including but not limited to installation, maintenance, *monitoring,* response, service, or the failure of the system. . . ." (Emphasis added), This sentence seems to suggest that monitoring is something the contract obligates the company to do.

For purposes of the present motion, I need not determine the difference, if there is one, between "monitoring" and "operating" an alarm system. Regardless of its statements in its brief, I find that the contract between the parties was the source of any duty Securitec had to monitor or operate the alarm system which it may have breached. The

quarterly fee was also provided for by contract, and Triple–S has supplied nothing to suggest that the quarterly fee reflected in Ex. 5 was for the provision of a service which was separate and distinct from the contract. Therefore, but for the contract, there would be no tort. As a result, I hold that under Michigan law, Triple–S cannot state a cause of action for negligence. Count II of the third-party complaint will be stricken.

*Misrepresentation*

■ Securitec's third argument is that Counts III and IV of Triple–S' third-party complaint, which allege innocent and fraudulent misrepresentation, fail to state a claim. Securitec first asserts that, pursuant to the analysis of Michigan law under the preceding heading, these Counts are subsumed under the breach of contract Count. I disagree. Paragraph 10 of the third-party complaint claims that "after disconnecting or shutting down the fire and security system, Securitec, Inc., represented to Triple–S that it still had an operational fire and security system". *See also,* Securitec Ex. 4, Aff. of Daniel B. Canavan, Chairman & CEO of Triple–S Plastics. Accepting Securitec's factual allegations as true, this claim is sufficiently distinct from the contract to stand at this point in the case.

■ Securitec next argues that these counts cannot be maintained under Michigan law because the alleged misrepresentations relate to promises of future performance, not an existing fact. *State Bank of Standish v. Curry,* 190 Mich.App. 616, 476 N.W.2d 635 (1991). I again disagree. Triple–S alleges that Securitec falsely represented that Triple–S' system was (at least partially) operational after Securitec had in fact disarmed the entire system. That is an alleged misrepresentation of an existing fact.

■ Thirdly, Securitec correctly asserts that Michigan law only permits the innocent misrepresentation cause of action when the alleged misrepresentation was made in the context of contract negotiations. In *United*

---

**3.** At the time of the 1983 contract, the amount was $273. The parties have not submitted any

evidence that the fee was raised.

*States Fidelity & Guaranty Co. v. Black,* 412 Mich. 99, 313 N.W.2d 77 (1981), the Michigan Supreme Court explained "innocent misrepresentation" as a basis of liability. One of the six elements of the tort is that the representation must be made "in connection with making a contract." *Id.* at 117–18, 313 N.W.2d 77. *See also, Eaton Corp. v. Magnavox Co.,* 581 F.Supp. 1514 (E.D.Mich.1984). The *Black* court later referred to this element as "a material statement made in the course of contractual negotiations." *Black,* 412 Mich. at 120, 313 N.W.2d 77. The reason for this requirement, and part of what distinguishes innocent misrepresentation from the intentional variety, is that statements made during contract negotiations are presumptively made with the intention that they be relied upon. *Id.* Therefore, there is no need to prove intent to provoke reliance.

Triple–S has made no effort to refute Securitec's legal argument on this point. Its fraud allegation clearly did not arise during the course of contractual negotiations. As a result, I hold that under Michigan law, Triple–S cannot state a cause of action for innocent misrepresentation. Count III of its complaint will be stricken.

■ Fourthly, Securitec claims that even if there was a fraudulent misrepresentation (the only misrepresentation count remaining), Triple–S waived its claim by failing to complain and continuing to perform under the contract after it "discovered" the alleged misrepresentation at the time of the fire. In support of this proposition, it cites a case from 1936. However, *Monroe v. Hoffman,* 276 Mich. 281, 267 N.W. 836 (1936), concerned an executory contract. The buyer of a theater sought the return of his money on the basis that plaintiff misrepresented the deal to him. Because the buyer continued paying and took other action which indicated an intent to own the theater, the court held that he had waived his misrepresentation claim. In contrast, in this case Triple–S does not seek to cancel its contract or have the money it paid for the system returned. It seeks payment for the alleged consequences of the systems' inaction. Discovery of the alleged misrepresentation in this scenario should not force litigants to choose between preserving a cause of action and continuing their safety system.

■ Finally, Securitec asserts that Triple–S has failed to allege the misrepresentation with sufficient particularity, and does not plead the factual predicate for its claim of fraud. I agree that these counts are vague, and I have had to cull their underlying factual allegations largely from Triple–S' brief. However, it would not be appropriate to dismiss them for this shortcoming. Therefore, I will treat Securitec's complaint of vagueness as a motion for a more definite statement, and it will be granted. Triple–S has fourteen days from the receipt of this Opinion and Order to amend its complaint and plead the factual basis of Count IV with more particularity.

### *Indemnification*

The prayer for relief following each count in Triple–S' third-party complaint asks for judgment against Securitec for "all damages sustained, including all damages claimed by Plaintiffs". Securitec asserts that this is "an inartful attempt" to state a claim for indemnification against Securitec. I disagree that this is what is being pled, and therefore will not reach the question of whether it is possible. I will say, as a matter of law, that it is certainly possible for an entity such as Securitec to be held liable for damages at or near the total loss without finding that it had a duty to indemnify Triple–S. The fact that, in that scenario, Triple–S might turn around and give the money to plaintiffs does not alter this fact.

### *Sanctions*

Finally, Securitec's motion asks the Court to sanction Triple–S for bringing a third-party complaint which Securitec believes to be baseless. I disagree with Securitec's assertion that there is no good faith argument to be made that it could possibly be held liable, and Securitec's motion certainly added to the procedural confusion in this case. Therefore, I refuse Securitec's invitation to sanction Triple–S.

*ORDER*

In accordance with the Opinion entered on this date;

**IT IS HEREBY ORDERED** that third-party Securitec, Inc.'s *amended* motion to dismiss the third-party complaint (dkt. # 28), filed May 26, 1993, is **DENIED in part and GRANTED in part.**

**IT IS FURTHER ORDERED** that **Counts II and III** of Triple–S' third party complaint will be **STRICKEN.**

**IT IS FURTHER ORDERED** that within fourteen days of the receipt of this Opinion and Order, Securitec must **amend its complaint** and plead the factual basis of Counts IV with more particularity. Failure to do so may result in the dismissal of these counts.

**IT IS FURTHER ORDERED** that third-party Securitec, Inc.'s motion to dismiss the third-party complaint (dkt. # 21), filed April 23, 1993, is **DENIED as moot.**